IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Jacob Holmes (K-84657), | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 16 C 5234 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| Tracy Engleson, | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below: (1) Defendant's motion to dismiss [11] is denied; and (2) Plaintiff's motion for attorney representation [13] is denied without prejudice to later renewal. Defendant shall answer the complaint by 11/27/16. The Court strikes the 12/19/16 status and resets it to 12/7/16 at 8:30 a.m. Defendants' counsel is directed to make arrangements for plaintiff Jacob Holmes available to participate in the 12/7/16 status hearing via telephone. Counsel shall contact the courtroom deputy, 312/435-5879, by 12/6/16 with the call-in information

## STATEMENT

Plaintiff Jacob Holmes, a prisoner now confined at the Pontiac Correctional Center, brought this pro se civil rights action invoking 42 U.S.C. § 1983, alleging that his rights were violated when IDOC officials shaved his dreadlocks and beard, which he grew and maintained for religious reasons, against his will. The Court on June 8, 2016, screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on a claim that his right to free exercise was violated by Defendant Tracy Engelson. (Dkt. 5, at 2-3 (citing cases)). Before the Court is Defendant Engelson's motion to dismiss Plaintiff's claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) [11], to which Plaintiff has responded [14], and Plaintiff's request for counsel.

The Court first addresses Defendant's motion to dismiss. In resolving that motion, the Court uses the same standard as that employed for screening the complaint, *see Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011); *see also Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009) (noting that motion under Rule 12(b)(6) challenges the sufficiency of the complaint), and will consider any additional factual allegations in Plaintiff's response, where consistent with the factual content of the complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015).

In arguing that the complaint fails to state a claim on which relief may be granted, *see* Fed. R. Civ. P. 12(b)(6), Defendant essentially maintains that the Court should determine, from

the complaint alone, that Plaintiff's dreadlocks[1] were shaved pursuant to a prison regulation that is, as a matter of law, reasonably related to legitimate penological interests. (See Dkt. 11, at 3-7.) In support of this argument, Defendant submits that rules regulating the hairstyles of prisoners for institutional security reasons have almost uniformly been upheld against constitutional challenges, (Dkt. 11, at 3), and that, because Plaintiff grew his dreadlocks "*for years*, it cannot plausibly be inferred that Engelson had no penological interest in ordering Plaintiff to cut his hair." (Dkt. 11, at 5 (emphasis in Defendant's motion)). As support for his argument that the Court can make this determination at the pleading stage, Defendant relies upon *Williams v. Snyder*, 150 Fed. Appx. 549, 551 (7th Cir. 2015), which, Defendant asserts, "affirm[s] the district court's decision to dismiss First Amendment claims in Merit Review Order . . . because cutting dreadlocks 'involved a *de minimis* imposition on [inmate's] free exercise of his religion and hat his interests were "far outweighed" by the prison's legitimate penological interests in the safety and security.'"

The Court disagrees. Critically, Defendant misconstrues the holding in *Williams*, which, in fact, confirms that it is proper to await the development of a factual record before balancing the parties' interests. In *Williams*, the Seventh Circuit *reversed* the district court's dismissal of the free exercise (and Religious Exercise in Land Use and Institutionalized Persons Act (RLUIPA)) claims, determining that "[t]he district court erred" by "essentially appl[ying] a summary judgment standard," in which "[t]he court purported to balance the interests of [the plaintiff] and the prison." *Id*. at 552. The Court emphasized that "such a balancing process is not appropriate based on the pleadings alone, without the benefit of additional factfinding or a summary judgment record," and that a "finding that the hairstyle policy involved a *de minimis* imposition resolves factual questions, which are not appropriately decided at the pleading stage." *Id*. (citing *Mack v. O'Leary*, 80 F.3d 1175, 1180 (7th Cir. 1996); *see also Grayson v. Goetting*, No. 15-cv-00198-NJR, 2015 WL 887800, at *3 (S.D. Ill. Feb. 27, 2015) (permitting plaintiff to proceed on First Amendment claims regarding required removal of dreadlocks for prison photograph).

Although Defendant correctly asserts that courts frequently uphold facially neutral prison grooming regulations against religious challenges, such cases typically, if not uniformly, involve determinations made after the development of a factual record. *See, e.g., Grayson v. Schuler*, 666 F.3d 450, 455 (7th Cir. 2012) (reversing grant of summary judgment to defendants); *Williams v. Snyder*, 367 Fed. App'x 679, 681 (7th Cir. 2010) (affirming grant of defense motion for judgment as matter of law after close of evidence); *Johnson v. McCann*, No. 08 C 4684, 2010 WL 2104640, at *7 (N.D. Ill. May 21, 2010) (granting summary judgment for defendants); *Thomas v. Winters*, No. 04-3049, 2006 WL 563035, at *1, *5 (C.D. Ill. Mar. 8, 2006) (same); *Clark v. Briley*, No. 03 C 3852, 2005 WL 2369330, at *5 (N.D. Ill. Sept. 26, 2005) (same).

Nor has Plaintiff, as Defendant suggests, effectively pleaded himself out of Court by alleging his years-long cultivation of his dreadlocks or including within his complaint documents that reference a prison policy as providing the basis for the shearing of Plaintiff's beard and dreadlocks. (Dkt. 11, at 4-5). Plaintiff has not, after all, including the policy language itself, much less evidence providing any explicit rationale underlying the policy or policies at issue. Nor does Plaintiff, merely by including the documentation that references institutional safety and

---

[1] Defendant notably does not suggest that any claim related to the shaving of Plaintiff's beard should be dismissed.

security, somehow vouch for an undisclosed policy or its underlying rationale. *See Thomas v. Kalu*, 218 Fed. App'x 509, 512 (7th Cir. 2007) (explaining that plaintiff did not, by attaching letter referencing a "step 5" in grievance process, affirmatively "plead the 'fact' that there is a 'step 5' in the grievance process," or foreclose himself "from later establishing facts that show he followed the prison's grievance process" or that step 5 was, in fact, unavailable to him).

Finally, Plaintiff does not bear the burden to, as Defendant suggests, "show that his hairstyle did not pose a safety or security threat at the time it was cut." (Dkt. 11, at 5). Instead, Plaintiff must show that the "prison has no need to regulate hair length . . . ." *Lewis v. Stearnes*, 712 F.3d 1083, 1085 (7th Cir. 2013). The Court cannot make this determination on the present record. Because Plaintiff has sufficiently alleged that the removal of his beard and dreadlocks thwarted his religious exercise without need (Dkt. 14), the Court Denies Defendant's motion to dismiss.

The Court next turns to Plaintiff's motion seeking attorney representation. Although "[t]here is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). In making the decision whether to recruit counsel, the Court must engage in a two-step analysis: (1) has the plaintiff made a reasonable attempt to obtain counsel on his own behalf or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does this particular plaintiff appear competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). This analysis does not focus solely on the plaintiff's ability to try the case, but on his ability to gather evidence and prepare and respond to motions. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013).

Factors to be considered include: (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (holding that it is difficult to make an accurate determination regarding a plaintiff's ability to litigate the matter when case is still in "its infancy"); (2) plaintiff's submissions and pleadings, *Olson*, 750 F.3d at 712 (well-written pleadings and appearance that plaintiff can follow instructions indicate that counsel is not needed); (3) medical and mental health issues, *Olson*, 750 F.3d at 712; (4) transfer to a different facility, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (transfer to a different facility may impede plaintiff's ability to obtain evidence including affidavits/declarations from others to support his/her claim); (5) plaintiff's capabilities, including intelligence (IQ), literacy, degree of education, communication skills, and litigation experience, *Pruitt*, 503 F.3d at 655; *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (recruitment of counsel required for a blind inmate with a tenth-grade education); *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014) (enlistment of counsel was necessary for a functionally illiterate inmate); and (6) complexity of the case, *Dewitt*, 760 F.3d at 658; *Henderson*, 755 F.3d at 566; *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt*, 503F.3d at 655-56.

After considering the above factors, the Court concludes that solicitation of counsel for Plaintiff is not currently warranted. As a threshold matter, although Plaintiff has not identified most of the attorneys or entities he contacted seeking legal assistance, he states that he "has made

repeated efforts to obtain a lawyer," which suggests that he may have made a reasonable effort to find a lawyer on his own prior to his present motion. Plaintiff is, however, encouraged to continue to write to attorneys, explain his claims, and ask that they represent him pro bono. Plaintiff should provide information regarding which attorneys or organizations he contacted seeking assistance, should he renew his motion at a later date.

Next, after reviewing Plaintiff's pleadings and participation in the case thus far, it appears that Plaintiff is capable of continuing to litigate this case on his own at this stage. Plaintiff's submissions are reasonably organized, and Plaintiff indicates that he has access to a "Jailhouse Lawyer's Handbook" as a legal reference. Defendant's motion and the Court's orders also have provided additional citations to relevant legal authority that Plaintiff may study as the case proceeds. Plaintiff also is encouraged to continue to use the resources at his disposal; these may include, in addition to the handbook, the law library and any staff or prisoners able to assist him as the case proceeds. Although Plaintiff has been transferred from the institution in which his hair was shorn, the present case involves occurrences over a short time frame that culminated in Plaintiff's hair being shorn; Plaintiff was a participant and has indicated that he has relevant knowledge and documents within his possession. (See Dkt. 1, at 4, 6.) The case is as yet in its early phases, as Defendant has yet to answer the complaint. Moreover, the Court grants wide latitude to pro se litigants in pursuing their lawsuits. Plaintiff's motion is denied without prejudice to later renewal.

**Dated: November 9, 2016**　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**AMY J. ST. EVE**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Court Judge**